# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 880 | **DATE** | 6/26/2001 |
| **CASE TITLE** | In Re: Bank One Shareholders | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion. For the most part, then, this Court will simply refer once more to what it has just said in Comdisco and will supplement that by referring the reader to Judge Walker's two opinions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL - 3 2001 | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/27/2001 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | | mailing deputy initials | |

Document Number

120

CD-7 FILED FOR DOCKETING

01 JUN 27  AM 8: 09

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: )
)
BANK ONE SHAREHOLDERS CLASS ACTIONS )
——————————————————————— )
) No. 00 C 880
JOHN B. McCOY, THOMAS E. REILLY, )
JR., RICHARD J. LEHMANN, DAVID J. )
VITALE, RICHARD W. VAGUE, ROBERT A. )
ROSHOLT, FIRST USA BANK, N.A. and )
BANK ONE CORP., )
)
Defendants. )

**DOCKETED**

**JUL - 3 2001**

**DOCKETED**

JUL - 3 2001

<u>MEMORANDUM OPINION</u>

On June 1, 2001 this Court held the fairness hearing to consider the parties' proposed Stipulation of Settlement ("Settlement"), which called for defendants' payment of $45 million in full settlement of all claims of the plaintiff class ("Class"). Based on the extensive submissions of the parties, the total absence of a single objection by any Class Member and the extremely small percentage of Class Member optouts, on the hearing date this Court gave an extensive oral statement of its findings and conclusions approving the Settlement, and it entered a written Order and Final Judgment reflecting the results of those rulings.

No further written opinion is necessary to elaborate on the approval of the Settlement amount and terms and various related matters. But one facet of this Court's approval of the result reached in this litigation--some issues relating to the award of

attorneys' fees to Wechsler Harwood Halebian & Feffer LLP
(referred to here as the "Wechsler Firm")--do call for issuance
of this further written treatment.

At the threshold, this Court has already issued a brief
June 11 memorandum order in which it turned down the requests of
some of the rejected suitors for the class counsel position
(which was ultimately won by the Wechsler Firm) to obtain this
Court's approval of their either (1) sharing in the Wechsler
Firm's $2.75 million fee or (2) receiving a payment (apart from
that fee) of their claimed fees and expenses out of the Class'
recovery (those firms' requests were unclear as to which
alternative was sought, but neither of them is acceptable).  No
further word has since come from any of the requesting firms, so
that nothing more need be said on that subject here.

As for the Wechsler Firm's fee itself, it provides renewed
strong support for the process of competitive bidding in awarding
legal representation for class members, even in the category of
securities class actions covered by the 1995 legislation on that
subject.  It will be recalled from this Court's published opinion
as to the use of that procedure in this action (the "Opinion," 96
F.Supp.2d 780 (N.D. Ill. 2000)[1]) that the Wechsler Firm had
included a voluntary cap on fees in its bidding formula--and that

---

[1] Citations to the Opinion will take the form "Opinion
at --," omitting repetition of the 96 F.Supp.2d reference.

cap of $2.75 million has in fact kicked in because of the size of the Class recovery obtained by the firm, so that its fees amount to just a bit over 6% of the total recovery. It is scarcely necessary to point out that such a participation is only a fraction of what many cases and even treatises describe as the "norm" for class action settlements, a subject that this Court has just had occasion to deal with at some length in another case, <u>In re Comdisco Sec. Litig.</u> On that ground alone the Wechsler Firm fee would meet the necessary standard of reasonableness.[2]

This Court had anticipated treating at much greater length with the Settlement's outcome in this action and with its implicit validation of the sealed bidding process, but two instances of the serendipity frequently encountered in the judging profession have pretty much obviated the need to do so. As chance would have it (again illustrating the homily that "timing is everything"), the <u>Comdisco</u> litigation has occasioned

---

[2] In light of one facet of the discussion in the Third Circuit's recent <u>In re Cendant Corp. PRIDES</u> opinion (243 F.3d 722, 742-43 (3d Cir. 2001)), and because of this Court's respect for the source of that discussion, this Court also sought and obtained from the Wechsler Firm information as to a lodestar figure based on its usual hourly rates and the time spent in this litigation. That information disclosed that only a modest multiplier would equate the lodestar figures to the bid-generated legal fee, which would provide added confirmation of the reasonableness of the latter if the <u>Cendant PRIDES</u> approach were to be taken. But this Court's recent <u>Comdisco</u> opinion also explores that subject in greater depth.

this Court's need to speak to the entire subject in detail. And again as chance would have it, District Judge Vaughn Walker--the judicial pioneer in the use of the bidding practice--has also recently issued two opinions in his Quintus Sec. Litig. and Copper Mountain Networks Sec. Litig. cases that go into considerable detail on various aspects of the relevant analysis. Although some facets of Judge Walker's approach do differ from this Court's,[3] the commonalities far outstrip any such differences. For the most part, then, this Court will simply refer once more to what it has just said in Comdisco and will supplement that by referring the reader to Judge Walker's two opinions.

Two subjects do, however, merit at least brief further mention here. One has to do with the utility of bidding in securities class actions to begin with, and the other is the related subject of what place a lodestar analysis should or should not play when a sound bidding approach has produced a result for the class well below the so-called "norms" adverted to in the caselaw or the literature.

---

[3] For example, compare the means by which this Court proceeded to the bidding and the consequent award of class representation in this action, treating the presumptive lead plaintiff's willingness to accept qualified counsel that offers the best result for all class members as a factor in determining whether the presumption should be converted into a definitive designation (a subject discussed in Opinion at 784), with Judge Walker's somewhat different methodology.

4

As for the first of those subjects, some courts and commentators have questioned how the use of competitive bidding can appropriately link up with the structure of the private securities class action legislation, which calls for the selection of class counsel by the lead plaintiff subject to the court's approval. But for this Court the key factor is the recognition that both the lead plaintiff _and_ the class counsel owe fiduciary obligations to maximize the benefits of the class action to the entire class as a whole. So long as consideration is given (as this Court did in this litigation) only to the approval of putative class counsel with proven track records in such litigation, such counsel having demonstrated their capability of pursuing matters vigorously with adequate resources and of obtaining highly favorable results, the net recovery to the class members--the bottom line--is by definition a direct function of how much the lawyers charge for their services. And as this Court has said in its just-issued Comdisco opinion, the notion that a prospective lead plaintiff has made certain that its own preferred counsel has proffered a fee arrangement that offers the best possible deal for the class is totally unrealistic. To this Court, the interacting considerations lead inexorably to the answer that what was done in this litigation properly meshes the statutory structure and standards with the court's own responsibility as surrogate for the absent class

members.

And as to the second subject (the place that any lodestar "cross-check" should occupy in circumstances such as those in this litigation), the Comdisco opinion has spoken to the matter at such length that a repetition of that analysis is really unnecessary. Instead this Court simply incorporates that treatment here and repeats its one-sentence Comdisco conclusion:

> Perhaps the best way to summarize the matter is to say that any fee that has been calculated as the product of an initially adopted well-conceived competitive bidding procedure should carry with it a strong presumption of reasonableness, just as the result of any true free market bargain of any kind is presumptively reasonable.

For this Court, any lodestar comparison must be fitted into that matrix on the basis set out in Comdisco's extensive discussion.

Milton I. Shadur
Senior United States District Judge

Date: June 26, 2001

6